Once you are ready, Mr. Henshaw Wood, you can proceed and Mr. Bell should be here for the floor. Thank you, Your Honors, and may it please the Court, Brett Henschelwood, on behalf of the United States. Rule 6e comprehensively regulates the disclosure of grand jury materials. It reaffirms the longstanding rule that grand jury materials are secret and then provides enumerated exceptions that reflect policy judgments about what purposes justify lifting that secrecy. A district court lacks authority to circumvent the rule by invoking its inherent authority to order disclosure solely based on academic interest about what occurred before the grand jury. That's not what we've said in the Eleventh Circuit before, is it? In Hastings and in Eisenberg, we said that the Court does have the inherent authority to disclose grand jury proceeding information in exceptional circumstances. So how do we say that the district court here abused its discretion when it relied on binding Eleventh Circuit authority? Your Honor, two points about that. First, this Court did say that in Hastings, Your Honor. In Eisenberg, what this Court said is it noted the government's argument that intervening Supreme Court precedent, Bank of Nova Scotia and Carlisle, rendered the holding of Hastings no longer good law, but declined to decide that question because it didn't need to to resolve the case in front of it. So I want to focus the Court on those opinions. Bank of Nova Scotia and Carlisle both say that a district court cannot use its inherent authority to circumvent or make decisions that conflict with a rule of criminal procedure. But that doesn't overrule Hastings or Eisenberg. It might weaken those opinions, but a panel of this Court recently said in the Pensacola Establishment Clause case that if a Supreme Court authority weakens binding Eleventh Circuit authority, we're bound to follow the Eleventh Circuit authority. It's got to specifically abrogate our Eleventh Circuit authority, and Carlisle doesn't do that. Carlisle and Bank of Nova Scotia don't specifically address Hastings, Your Honor, but the reasoning of Hastings says that despite the text of the rule, a court, a district court may act outside, that's the line from Hastings, the rule in certain circumstances, and that's exactly what Carlisle says. Do those Supreme Court opinions say anything about grand jury transcripts and the disclosure of grand jury transcripts? No, Your Honor. Carlisle says that a district court may not do things that circumvent or conflict with the Federal rules of criminal procedure, of which Rule 6e is a part, and there's nothing in the reasoning of those opinions, there's no way to square the reasoning of Hastings with the reasoning of Bank of Nova Scotia and Carlisle, and in fact, I haven't seen an attempt in this case to try. The point is simply that at the time Hastings was decided, Bank of Nova Scotia and Carlisle had not yet been decided by the Supreme Court, and this Court in Hastings made a decision that has subsequently been, you know, is not reconcilable with those cases. Because Your Honor, Rule 6e itself is exclusive. It says in Rule 6e-2, unless these rules provide otherwise, there shall be no disclosure of grand jury information. And in Rule 6e-3. Can I ask you a question before you dive into the rest of your argument? Yes, Your Honor. Mr. Henshelwood, I want to make sure I get this right. You are affirmatively deciding not to challenge the District Court's exercise of discretion if it had the authority to go outside of Rule 6. Your position is the District Court had no authority whatsoever to depart from the language of Rule 6, and therefore it erred. But if we disagree with you on that point, you have not made an argument that exercising discretion was also error. Well, Your Honor, I want to answer that in two parts. So the bottom line answer is yes, the District Court's exercise of discretion if the correct factors apply. We are not contesting the application of those factors in this case. Now I would like to come back. Judge Wilson obviously was pressing me about the Hastings decision. We have said that even if Hastings is still good law, even if you believe Hastings still binds this Court, the District Court still lacked inherent power to make a disclosure solely on the basis of historical interest. Hastings itself doesn't give the District Court that authority because Hastings is very narrowly reasoned and addresses only very limited circumstances. But if we look at some of the other circuits, they have said that district judges have the authority to make grand jury proceedings for historical purposes. The Second Circuit said it. The Seventh Circuit said it. The District of Columbia Circuit said it. And they all said it after this Supreme Court authority that you said has changed its law. Well, Your Honor, the D.C. Circuit has not said that. And the decision I think you're referring to is a case called Haldeman from 1974, which not only predates Carlisle and Bank of Nova Scotia, but also predates Congress's direct enactment of the unless these rules provide otherwise. I'll give you that, but not the second and not the seventh. That's correct. The Seventh Circuit recently, in a divided decision, directly ruled on this question and we obviously recognize that. But the bottom line is that the reasoning of those cases still cannot be squared with Carlisle and Bank of Nova Scotia, which, and it cannot be squared with the actual text of the rule. Unless these rules provide otherwise, says Rule 6e2, there will be no disclosure of grand jury materials. And Rule 6e3 addresses the circumstances in which, for the most part, these rules provide otherwise. And it enumerates specific exceptions, specific situations in which a district court may authorize a disclosure of grand jury materials. How do you square that argument, notwithstanding Carlisle and Bank of Nova Scotia, with the Court's use of supervisory power in earlier cases, cases which have not been overruled? Your Honor, I'm not sure. If you're referring to cases that predate Rule 6e. No, I'm not talking about the grand jury context. I'm talking about scenarios where the Court has chosen to do things in the exercise of its supervisory power over the Federal courts that are not dictated by the language of any rule or statute. Well, Your Honor, we don't deny that there is inherent authority that district courts possess. And this gets to the points about the nature of inherent authority in this case and why we think, even if Hastings is still binding on this panel, which, again, we don't believe it is, but even if it is, this type of disclosure is beyond a district court's inherent authority. Why is that? Because inherent authority is about protecting and vindicating the judicial process, which is why a court has the inherent authority to sanction attorneys who appear before it, to vacate judgments procured by fraud, to regulate admission to the bar. Those types of judgments, which are about protecting the court's ability to function, are what inherent power exists for. This is a judgment about what social purposes, what beneficial purposes, to use the language from Bagot, justify disclosure of grand jury materials. And that is a policy judgment that has been made repeatedly by Congress. So if the allegations that Mr. Pitchford was trying to uncover or develop a theory on were that that grand jury proceeding had been a sham from the beginning, where would your argument go? That still wouldn't cover, it's still not covered by any of the exceptions, Your Honor. No, the inherent power issue that you just mentioned about protecting the judicial process. Your Honor, there are specific situations in which district courts exercised inherent power to disclose grand jury records prior to the rule, addressed a judicial proceeding actually occurring before the court. So a situation where, for example, a defendant in a criminal case said, I believe there was misconduct before the grand jury that led to my indictment. A district court had discretion to order disclosure of grand jury information in order to determine whether, in effect, an indictment was procured through misconduct or fraud. And that was to protect a proceeding actually occurring before the court. So those are the situations you see pre-1946, prior to the enactment of Rule 6e. Rule 6e in 1946, when it's originally enacted, codifies precisely those situations. It contained an exception for use of grand jury materials in judicial proceedings and for a procedure for defendants to petition for grand jury matters when they believed misconduct had led to their indictment. I know, but we're moving to your second argument, which is your alternative fallback argument, which is accepting grudgingly that Hastings still binds the panel and that there is a pocket of inherent authority under which district courts can act. There was no pending proceeding in Hastings. That's correct, Your Honor. So what makes Hastings different from this case? Your Honor, Hastings... It was an after-the-fact thing. That's correct, Your Honor. But Hastings, the court in Hastings rested its reasoning on three principles. The first was that the disclosure requested was closely analogous to an existing exception. There were... The second was that there were specific indications in statutory text and legislative history that Congress intended for a disclosure to occur in those circumstances. And the third was that it directly affected the functioning and independence and credibility of the judiciary because you had a judicial misconduct proceeding following the indictment of a sitting federal judge on bribery charges. So I go back to my question. If the claim here was, and the district court verified it by its review of the district of the grand jury materials, that the grand jurors had been bribed in this case to return a no true bill, does Hastings allow the exercise of discretion? Your Honor, I still think in that circumstance, you'd have to explain how that was consistent with Carlisle and Bank of Nova Scotia. No, no, no. But again, Your Honor... We're moving to your second alternative argument. I've moved past the first. Your Honor, I think in that circumstance, the answer is maybe. But again, that's fundamentally different from the kind of judgment that's taking place here. Remember... I know, but we have to write an opinion in this case. I understand. And we have to also figure out what's going to guide district courts and this court in the future. And so those difficult questions at the margin are important to figure out as well. They are, but they're not presented here. This is not a difficult question. No, but that's no help. Well, Your Honor, the point is that the guiding principle for the exercise of inherent power has always been the protection and vindication of the judicial process. And perhaps your scenario implicates that concern in a way that would trigger the district court's inherent power. But that is not the situation here. Could the government... Could the grand jury materials be disclosed at the request of the government? No, Your Honor. That's not... Never? What if it was 100 years from now? Your Honor, there could be an amendment to the rule. In fact, there are bills in Congress right now that would provide for the disclosure of grand jury materials in closed civil rights cold cases, but they have not been enacted. Perhaps they will be. There can be changes that take place through the rulemaking process or through congressional action that would provide for disclosure of these records. And our point is simply that those judgments should be made by the policymaking bodies, not by district courts on an ad hoc basis, making judgments about what's sufficiently historic or sufficiently long ago. And of course, there's a policy that supports the rule, I guess, and it's to protect secret grand jury information, right? Yes, Your Honor. And so, I mean, it's been so long, what would be the harm? Your Honor, our objection is not to these particular records, but the problem is that the judgments about how long is long enough, who should make the decision about what records are sufficiently historic. So for example, you might have... And all that, but what would be the harm? Your Honor, you can imagine that there might be harms on primary conduct, so individuals who might be called to testify in a case that's gained notoriety. They're all deceased. No, I'm talking about a current individual who gets called to testify in a case that everybody knows is going to be of great historical interest. If they know their testimony will be disclosed, it may affect their conduct. But the fact is... Well, then that's a factor that the district court would take into consideration and say, I exercise my discretion not to disclose grand jury materials because I want to protect... Isn't that why we have district judges? Well, Your Honor, but that's also why Congress has specific... And the Supreme Court, through its rulemaking capacity, has specifically enumerated the circumstances in which disclosure is permissible to make those judgments. Those judgments are not judgments to be made in the course of ad hoc inherent power consideration. It's a question about what purpose is justified disclosure, whether it's all historical records or only some of them, how long has been too long. You know, for example, the rule as it currently stands permits disclosures to state officials for the purpose of enforcing criminal law, but not civil law. And that reflects a judgment by Congress and by the Supreme Court in its rulemaking capacity that criminal purposes justify the lifting of grand jury secrecy, but civil purposes don't. And those kinds of policy judgments are not something that a district court does through its inherent power. All right. Counsel. Thank you. Your Honor, why aren't the grand jury transcripts part of the record in this case? Talking about disclosure of grand jury records. We don't have them. Why didn't you make them a part of the record? Your Honor, I actually haven't seen them. I'm not authorized to see them. Well, the district court had them. The district court had them and reviewed them, but I'm not... I don't have access to those records. I don't know why they wouldn't have been included in what was transferred from district court, but I assume you could access them if you wanted to, but... All right. All right. Thank you, Mr. Henshawood. We'll hear from Mr. Bell. Good morning. May it please the Court, Learned Counsel Joseph J. Bell from the great state of New Jersey, of the law firm of Bell and Chivas, on behalf of the appellee petitioner, Anthony Pitch. With the Court's indulgence, I'd like to recognize Tanya Lynette Hayes, the granddaughter of the late Roger Malcolm, a victim in this tragedy, along with Cassandra Greene of the Morris Ford Committee. My client respectfully requests that this Court should affirm the United States District Court's opinion and order the release of the Morris Ford grand jury transcripts. The appellee petitioner has demonstrated exceptional circumstances and the historical significance consonant with the policy and spirit of Rule 6E and the holdings in sister circuits of the Second and Seventh, and most importantly, here in the Eleventh Circuit, in the Hastings decision. Mr. Bell, let me ask you a question. In the eyes of one person, a given proceeding might be exceptional and extraordinary and groundbreaking and of historical significance. To another person, they might not. How are we supposed to write an opinion that provides guidance on that point? Obviously, to Mr. Pitch and to the family members, this case is of incredible importance. But another case in another jurisdiction might well be as important and as historical for other individuals. So why wouldn't this potentially open the door to anyone who is interested in a prior grand jury proceeding to request disclosure? I believe in this particular case, the historical exception is the overriding factor. And succinctly, this was one of the last mass lynchings in America. This atrocity occurred in 1946, some 72 years ago, and a grand jury convened in December of that year. At this location, and I have to get into a little bit of the history of this for you. Are any of these witnesses still alive? No. Is that a fact in the record? Yes, that was stipulated by the United States District Attorney in the Middle District, Mr. Peterman. It's a cold case. Four African-Americans were shot at considerable range, tortured, found and gagged. The victims, George W. Dorsey, a five-year veteran coming back from the Pacific and African front, returning victim, his wife, May, whom the coroner's notes indicated, suffered a death by violence. Roger Malcolm, tied and bound, shot in the face with a shotgun, received that blast to his face. His wife sustained ghastly wounds and was also assassinated. All victims were shot multiple times with both pistols and shotguns. Had cracked skulls, shattered limbs, gaping wounds, and shredded flesh. The DBI records reveal they were shot over 60 times. And I'm sure, Your Honor, if there are other cases that are analogous to that case of Barr, this court, like any other circuit, would weigh the facts and circumstances as Judge Treadwell did below. No, I'm certainly not disputing the circumstances of this horrific event. But to other individuals, for example, other journalists other than your client, another grand jury proceeding in another place involving some event that was of historical significance there might also, in that journalist's mind, warrant disclosure. What line are we supposed to draw? The supervisory inherent authority of district court judges to weigh it on a case-by-case basis. So no standard at all? Well, the standard is the historical exception or exceptional circumstances using the Craig factors as the court did in the Second Circuit. Well, if that's the case, then what's the reason for the exceptions? The reasons for the exceptions is that the law has outgrown its primitive stage of formalism where the precise rule is the sovereign talisman and every exception thereof is fatal. This court has been on the cutting edge. It's been on the cutting edge with Hastings. It's been on the cutting edge in the district court with Judge Treadwell's decision. But here you have, in this particular analogous situation, you had 2,790 people interviewed, 106 people testified before a grand jury, and no one, no one to this date has been brought to justice. I mean, I understand the reason for the rule and there's a policy argument behind it because we want to encourage witnesses who are called to testify before a grand jury. We want to encourage them to testify and they ought to be able to know that their testimony is going to be kept secret and that encourages truthful testimony. But those are 72 years after the date, Your Honor. But I might be called to testify before a grand jury tomorrow and I might want my testimony to remain secret for the next 100 years. And it probably will be. But we're saying that this case, and using the factors employed by the Craig Court, outweigh any secrecy interest that the government may have. It's the passage of time. It's also the fact, too, that the grand jury is not a free-floating institution. I might want my grand jury testimony to remain secret long after I've departed this earth. Particularly in a case as horrific as this, I'm wondering why that doesn't increase our concern for the secrecy of these proceedings. Because there are no witnesses that are alive. How do we know that? How do we know that's happened in 1946? What about family members of the witnesses or the grand jurors? A lot of those are still alive, aren't they? Don't they have an interest in the reputation of their families? Does the reputation of their families outweigh why we don't have an answer to the question of why this event? That's not going to happen, is it? Because there's not going to be any prosecution in this case. There's not going to be any prosecution. They've deemed it a cold or a closed case. So the purpose, then, is to try to malign someone? No, it's not to malign somebody. It's to try to find out or figure out why this horrific event occurred. This is a historical event. It also had, it was tied into the 1946 Democratic election for the office of governor, where the black citizens were the only ones that were for the first time allowed to vote and participate in that process. If you, let's flip, let's, and again, no one's questioning the horrible circumstances that effect on relatives or surviving family members, but would your position be the same if an indictment had been returned against one person in that case? You know, I believe in that particular case. They thought, we're just going to indict the person we think is the ringleader, and that person was indicted, prosecuted, convicted, and now Mr. Pitch wants to know why other people were not indicted given that it had to involve more than one person. Would you still get disclosure? I think if one person had been indicted for that or a series of persons had been indicted. One person, no, my hypothetical is one person. One person being indicted, it would have been an impossibility. No, it's not an impossibility because it's a hypothetical question. So the same way that I asked Mr. Hinshelwood difficult questions about line drawing, I'm trying to ask you from a different perspective. And I'm trying to figure out what is it that makes a difference? Is it the fact that none of the witnesses are still alive? That's correct. Is it the fact that no one was charged? That's also correct. So if someone was charged, that makes a difference? I think it would have ended the inquiry and the process of why we're here today. I think that this court has that inherent supervisory authority. If the grand jury charged somebody and that person was acquitted because that person was seen as a low level person who was in the wrong place at the wrong time and not criminally culpable. So there was an indictment, but there were acquittals. Would you get disclosure? I guess it would depend upon the factors of why we were seeking the release of the record. Same question. For the historical exception. Yeah, same thing. Mr. Pitch wants to know what happened in that grand jury room? What the grand jurors learned that led them to charge only one person who ended up being acquitted? Same issue. Just a twist of the facts. Would you think you'd get disclosure? I'm not sure. I know though that in this particular case, and I can only go by this particular case and the decisions most recently in the Carlson case out of the Seventh Circuit were a noted historian asked for release of records from 72 years ago regarding the Japanese breaking of the code of the Japanese Naval Code and the records were released to that person only because they felt that the passage of time was so great that the passage of time created that historical exception and that the interest, if you balance the interest with secrecy in the release of the documents, the balance favored the release of the grand jury testimony. But there was a pretty strong dissent in that case. Still, that was only a dissent. The majority... I know, but we're talking about what the Seventh Circuit did and that view of the panel was not unanimous. No. The dissenting judge thought that more weight should have been placed on the limits created by Rule 6e. But I think that this court has already opened the door in the Hastings decision and I think the precedent has been set in Hastings and also some of the dicta that was given in the Eisenberg case. You know, when Hastings came out, some people thought that wasn't a good decision back then because it allowed judges to figure out what they thought was for the public good and bypass the strictures that were placed by Rule 6e. I don't think there's been abuse by any of the judiciary in connection with the release of records. I'm not using the word abuse. I'm just saying that there were some who did not think that Hastings was correctly decided because it allowed judges to substitute their views of what was in the public interest for language that was in the grand jury rule. But didn't the Pittsburgh plate glass case of the United States Supreme Court indicate that disclosure of sealed grand jury materials is committed to the inherent supervisory authority and discretion of the trial judge? Yes, but when was that case decided? 1959. With any citation to the rule? No, it was part of the decision in that particular case. And also the committee notes in Rule 6e indicate as well the advisory committee notes that grand jury records are not strictly conferred to instances specifically spelled out in the rule. And along with Rule 57 of the rules as well, that the court can address issues that are not absolutely contained or forbidden in the rules. In the Schiavone case in 1986, it also indicated too that the committee notes to which we give some weight does not displace the court's limited inherent power to address situations not contemplated by the rules. The transcripts will be considerable to the public perception too as well. Again, against the law, the transcripts led considerable to the public perception and record for the source of information as to what transpired in the Moore's Fourth Crossing. I'd like to ensure and promote public confidence in the judicial process. I'd like to thank you for your time, attention, and courtesy. Thank you, Mr. Bell. We'll hear again from the government. And Mr. Henshaw, let me tell you where my mind is right now. If we were deciding this case on a clean slate without Hastings, I might agree with you. Courts, I mean, you're bound by those six exceptions in Rule 6. But I'm having a hard time agreeing that we find that a district judge abuses his discretion by relying upon precedent of this court that has only been weakened and not abrogated. And in United States v. Eisenberg, this court had the ability to overrule Hastings based on Carlson, and we didn't do it. All right. Your Honor, I'd like to start. There are two or three points about that. First, in Eisenberg, this court concluded that it didn't need to reach that question. And obviously, it's an ask to have this court conclude that its prior precedent has been overruled. And the Eisenberg court quite sensibly said, we don't need to decide that question. We're going to note the arguments been made, but it doesn't matter for these purposes. It's the Supreme Court authority that has to be clearly on point. It's not clearly on point because it doesn't concern a district court's exercise of its inherent authority to disclose grand jury proceedings. Those cases do not. As I pointed out, Carlisle specifically says you can't circumvent or conflict with the federal rules of criminal procedure of which this is a part. And we know from United States v. Williams that a district court's authority over the grand jury is even less. So Hastings, in my mind, is weakened, but it's not overruled. And if it's only weakened, and we've recently said in, what is it, Contract v. Pensacola, that if Supreme Court authority weakens our precedent, we're bound by that precedent. That's fair enough, Your Honor. So then there are three ways that this court would have to go beyond the reasoning of Hastings to affirm the district court here. The first is that you would have to explain how the exercise of inherent power in contravention of Rule 6e is consistent with Carlisle and Bank of Nova Scotia, which this court has never done. Second, you would have to explain — We don't have to do that if we're bound by prior precedent. Your Honor, again, because the second point, you would have to explain why the reasoning of Hastings, which is quite narrow and limited to circumstances closely analogous to an existing exception and based on a direct congressional — indications in congressional text and legislative history, disclosure is appropriate. Even though those factors are absent here — But you haven't challenged the exercise of discretion in this case. No, Your Honor. I thought that's the question we started off with. No, Your Honor, because this is an error of law to conclude that there's inherent power to make a disclosure for this purpose. Correct. So you're not — again, let's go back to the first question. You're not challenging the district court's balancing of factors within the historical exception, right? Correct, Your Honor. If there is a historical exception — but Hastings doesn't establish a historical exception. Hastings establishes something much narrower. It says, in circumstances closely analogous to an existing exception, where there are specific indications in statutory text and legislative history that Congress intended for a disclosure to occur, a district court can act outside the text of Rule 6e. But there is persuasive authority from other circuits that establish a historical exception. Your Honor, the district court certainly was entitled to look at that and reason about that. But if your question is, how did it abuse its discretion, it committed an error of law here, and an error of law is always an abuse of discretion, as this Court has made clear many times. And so, Your Honor, the third way in which you'd have to go beyond Hastings to affirm the district court here is you would have to conclude that inherent power reaches this type of judgment, a policy judgment about what circumstances justify disclosure of grand jury materials. It's not clear on — But Hastings did that. It did — Whatever you think of it, it involved a policy judgment at the end of the day of whether or not disclosure was warranted and justified. But a policy judgment entirely consistent with other exercises of inherent authority. Because inherent authority, remember, exists to protect and vindicate the judicial process. And Hastings is a case involving an indictment of a sitting federal judge for bribery. And if that doesn't implicate those exact types of — A case in which the judge was acquitted. That's correct, Your Honor. And I'm not here to tell you that Hastings was correctly decided. But the bottom line is that that exercise of inherent power, whatever you might think of its relationship to the rule, its relationship to Carlisle and Bank of Nova Scotia, is fundamentally different in kind from a judgment that certain purposes justify disclosure even though the rule doesn't provide for them. So, for example, there's no reason on, you know, if a district court exercises this kind of inherent authority to step outside the rule, it could always disclose materials for only criminal proceedings justify the lifting of grand jury secrecy. The point is that the Supreme Court has repeatedly said, first, actually, in Pittsburgh plate glass, which my colleague mentioned, and the important line from Pittsburgh plate glass, Your Honor, is that any disclosure of grand jury minutes is covered by federal rule of criminal procedure 6E promulgated by this court in 1946 after the approval of Congress. That's any disclosure of grand jury minutes. Again, in Bagot in 1983, Your Honor, the Supreme Court emphasized that rule 6E is an affirmative limitation on grand jury disclosure of grand jury materials and that a district court cannot and that it reflects policy judgments about what purposes justify disclosure. And that sort of judgment should be made by Congress or the Supreme Court in its rule making capacity. There are no further questions. All right. Thank you, counsel. Thank you.